## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JOHN S. WILLIAMSON, and
NANCY L. WILLIAMSON,

      Plaintiffs,

vs.                                                                                      No. CIV 04-537 JB/LFG

JACKIE SENA a/k/a JACQULINE SENA,
CHRIS ROBINSON, FIDEL ATENCIO,
MIKE ATHERS, KENNY WYATT,
SHARON PARKER,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendants' Motion to Dismiss or Alternatively for Summary Judgment and Brief, filed September 21, 2004 (Doc. 9). The primary issue is whether the *pro se* Plaintiff, Nancy L. Williamson, has stated causes of action against the Defendants in their individual capacity. Because the law bars Williamson's claims – except for her Fourth Amendment claim – against the Defendants in their individual capacities, the Court will grant the Defendants' motion in part; the Court will dismiss Williamson's Complaint, except for her Fourth Amendment claim, with prejudice. The Court will dismiss the Fourth Amendment claim without prejudice, and Williamson may file an amended complaint detailing the factual basis of her Fourth Amendment claim and the property held by her which has been subject to the allegedly illegal search and seizure.

## FACTUAL BACKGROUND

The Defendants have attached declarations showing that their only contacts with Williamson

before the commencement of litigation against them were in collecting her tax liabilities.  Defendants

Michael Albers,[1] Sharon Parker, and Christopher Robinson's only encounter and involvement with

Williamson were as Special Agents accompanying the service of IRS Notices of Seizure and Sale on

April 4, 2003.   See Declaration of Michael Albers ¶¶ 3-4, at 1 (executed August 17, 2004);

Declaration of Sharon M. Parker ¶¶ 3-4, at 1 (executed August 17, 2004); Declaration of Christopher

Robinson ¶¶ 3-4, at 1 (executed August 6, 2004).  Defendant Fidel Atencio's sole involvement was

in selling Williamson's property to satisfy her tax liabilities between February and June 2003.  See

Declaration of Fidel Atencio ¶¶ 3-4, at 1-2 (executed July 30, 2004).  Defendant Revenue Officer

Jackie Sena has been involved with collecting Williamson's husband's federal tax liabilities since

1996.  See Declaration of Jackie Sena ¶¶ 2-6, at 1 (executed August 18, 2004).  Defendant Kenny

Wyatt's sole involvement has been as Sena's managing supervisor during that period.   See

Declaration of Kenny Wyatt ¶¶ 2, 3(B),[2] at 1 (executed August 18, 2004).  The common bond

amongst all six defendants was serving Williamson on April 4, 2003, with IRS Notices of Seizure and

Sale.

## PROCEDURAL BACKGROUND

        This case is the latest of a succession of cases that Williamson has filed complaining about the

assessment and collection of taxes.  See Williamson v. Commissioner, T.C. Memo 1981-721, 1981

WL 11099 (U.S. Tax Ct.); Williamson v. Commissioner, T.C. Memo 1987-118, 1987 W.L. 40195

(U.S. Tax Ct.); United States v. Williamson, 1 F.3d 1134 (10th Cir. 1993);  Williamson v. United,

---

        [1] Williamson names "Mike Athers" as a Defendant.  On the United States' information and belief, it should be "Michael Albers."

        [2] Wyatt's declaration contains two number "threes."  Accordingly, the Court will refer to the paragraphs as "3(A)" and "3(B)" respectively.

Civil No. 94-253 (D.N.M.); United States v. John S. Williamson, Civil No. 95-1153 (D.N.M.); Williamson v. United States, 84 F. Supp. 2d 1217 (D.N.M. 1999), aff'd, 215 F.3d 1338 (10th Cir. 2000).[3]   In one of those prior cases, United States v. John S. Williamson, Civil No. 95-1153 (D.N.M.), the Honorable Santiago Campos, Senior United States District Judge, ordered Williamson's husband not to file actions against any present, past, or future employees of the United States without first obtaining the Court's permission.  See id., Civil No. 95-1153 SC, Judgment at 2, entered May 7, 1997 (D.N.M.).[4]

Subsequently, the Williamsons filed suit against the six Defendants, which led to several opinions and orders, and eventually final judgment.  See Williamson v. Sena, No. CIV 03-0570 JB/WDS (D.N.M.); id. Memorandum Opinion, filed May 12, 2004 (Doc. 43)(denying the Williamsons' motion for default on failure to answer and granting in part the Defendants' motion to dismiss); id. Memorandum Opinion and Order, filed May 12, 2004 (Doc. 42)(dismissing the case without prejudice for failure to properly serve and prosecute case); Memorandum Opinion and Order, filed July 8, 2004 (Doc. 46)(denying the Plaintiff-in-Intervention's motion to intervene).  That case

---

[3] The Defendants' attorney represents that he is aware the Williamsons have filed other cases, but does not have cites for them.  See Motion for Summary Judgment at n.1.

[4] Specifically, the Judgment states:

It is further ORDERED, ADJUDGED and DECREED that the Defendant, John S. Williamson, is enjoined from filing any future liens, writs of escheat, writs of attachment, or legal actions against any present, past or future employee or officer of the United States, for actions taken while employed by the United States or while an officer of the United states, without first obtaining leave from a competent federal or state court.

See United States v. John S. Williamson, Civil No. 95-1153 SC, Judgment at 2, entered May 7, 1997 (D.N.M.).

contained similar allegations against the Defendants as in this case.[5]  The Court dismissed that case

without prejudice for failure of service on the Defendants and entered Final Judgment on May 18,

2004.  See Williamson v. Sena, No. CIV 03-0570 JB/WDS (D.N.M.), Final Judgment, entered May

18, 2004 (Doc. 44).

   The Williamsons *pro se* filed the Complaint in this case on May 17, 2004.  The Williamsons

admit that they have re-filed CIV No. 03-570 as this case.  See Petitioners/Claimant's Reply [sic] to

Defendant's [sic] Motion to Dismiss or For Summary Judgment at 5 ("Response").  The Williamsons

have named six officers or employees of the United States Internal Revenue Service as Defendants

in this case.  From the Court's careful review of the Williamsons' Complaint, it complains about the

Defendants' actions in collecting their tax liabilities.  Specifically, the Complaint contends that the

Defendants have filed or caused to be filed faulty Notices of Federal Tax Liens in the public record

absent verification and thus in violation of the right to procedural due process.  See Complaint ¶ 10,

filed May 17, 2004 (Doc. 1); Memorandum in Support of Libel of Review ¶ 16, filed May 17, 2004

(Doc. 1).[6]  Also, on June 3, 2003, the Defendants allegedly conducted a sale of property without the

benefit of a court order, in violation of 28 U.S.C. § 2463 and 26 U.S.C. § 7401.  See Complaint ¶¶

26-27.  In effect, the Complaint asserts that the Defendants have conducted an unconstitutional

seizure and sale of property in violation of Supreme Court opinions regarding seizures and sales of

private property.  See generally Complaint and Memorandum in Support of Libel of Review.

---

   [5] While all the Defendants sued in this action were also defendants in the No. 03-570 case, the No. 03-570 action also included ten additional named defendants.  See Williamson v. Sena, No. CIV 03-0570 JB/WDS (D.N.M.), Complaint at 1 (caption), filed May 14, 2003 (Doc. 1).

   [6] The Williamsons filed a document styled "Memorandum in Support of Libel of Review" along with their complaint.

The Complaint asks for the return of property.  <u>See</u> Complaint at 9-10.  The Court and the Defendants understand the Complaint as asking for a tax refund.  <u>See</u> Motion for Summary Judgment at 5.  The Complaint asks the Court to remove tax liens and impose punitive damages.  <u>See</u> Complaint at 10.

The Complaint makes a point of stating that the Defendants are being sued in their individual capacities.  The Complaint states that the Defendants -- "Respondents/Libelants" -- are being sued in their "individual capacity" and "individually, not in any official capacity."  <u>Id.</u> at 1 (Caption).  Paragraph 7 of the Complaint states "the United States **is not a proper party**" and "the [Williamsons] **do not** make the United States a party."  <u>Id.</u> ¶ 7, at 4 (emphasis in original).  The Complaint alleges that the Defendants "are acting as unauthorized private citizens and are not entitled to the protection of 'official duty' and the United States Department of Justice is barred from defending [the Defendants]."  <u>Id.</u>

The Defendants first moved to dismiss for failure to comply with a prior Court order and for failure to properly serve all the Defendants.  <u>See</u> Motion for Summary Judgment at 17.  The Court dismissed Williamson's husband's claims because he violated the Court's order prohibiting him from bringing actions against any present, past, or future employee of the United States without first obtaining the Court's permission.  <u>See</u> Memorandum Opinion and Order at 8-9, filed April 14, 2005 (Doc. 13); Order at 1-2, filed April 14, 2005 (Doc. 14).  The Court stated that, if Williamson did not perfect service within ten days of the opinion, the Court would dismiss the individual defendants for insufficient service of process.  <u>See</u> Memorandum Opinion and Order at 9 (Doc. 13).  The United States has reported, however, that Williamson perfected service within the ten-day period.

Alternatively, to the extent that the Court must rely on matters outside the pleading, the

Defendants move for summary judgment on Williamson's claims under rule 56 of the Federal Rules of Civil Procedure.  It is to the Defendants' Motion for Summary Judgment that the Court now turns its attention.

## STANDARD FOR DECIDING MOTIONS FOR SUMMARY JUDGMENT

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The opposing party may not rest upon mere allegations and denials in the pleadings, but must set forth specific facts showing that there is a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(citing Fed. R. Civ. P. 56(e)).  An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the non-moving party. Id. at 249-50 (citations omitted).  Mere assertions or conjecture as to factual disputes are not enough to survive summary judgment.  See Branson v. Price River Coal Co., 853 F.2d 768, 771-72 (10th Cir. 1988).  The Court may only consider admissible evidence when ruling on a motion for summary judgment.  See World of Sleep, Inc. v. La-Z-Boy Chair, Co., 756 F.2d 1467, 1474 (10th Cir. 1985)(citing Fed. R. Civ. P. 56(e)).

If a defendant seeks summary judgment, it has an "initial burden to show that there is an absence of evidence to support the nonmoving party's case." Munoz v. St. Mary-Corwin Hosp., 221 F.3d 1160, 1164 (10th Cir. 2000)(quoting Thomas v. IBM, 48 F.3d 478, 484 (10th Cir. 1995))(internal quotations omitted).  Upon meeting that burden, the plaintiff must "identify specific facts that show the existence of a genuine issue of material fact." Id. (citations and internal

quotations omitted).

## LAW ON 26 U.S.C. § 7422 AND 28 U.S.C. § 1346

Under 28 U.S.C. § 1346, a taxpayer may sue for a tax refund to recover "any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws." 28 U.S.C. § 1346(a)(1). According to 26 U.S.C. § 7422, a suit for a tax refund "may be maintained only against the United States and not against an officer or employee of the United States." 26 U.S.C. § 7422(f)(1). See Buck v. United States, 466 F.2d 481, 483 (10th Cir. 1972) (recognizing the requirement that "refund suits may be maintained only against the United States and not against an officer or employee thereof"). If a plaintiff names individuals as defendants in a tax refund suit rather than the United States, "the court shall order, upon such terms as are just, that the pleadings be amended to substitute the United States as a party for such officer or employee." 26 U.S.C. § 7422(f)(2).

Before launching a tax refund suit against the United States, a plaintiff must first file an administrative claim for a refund with the Secretary of the Treasury. See 26 U.S.C. § 7422(a); Sorrentino v. IRS, 383 F.3d 1187, 1188 (10th Cir. 2004)(confirming that § 7422(a) "authorizes a taxpayer to commence a tax refund suit against the Government once 'a claim for refund or credit has been duly filed'" and that "the taxpayer's timely filing of such claim with the IRS is a jurisdictional prerequisite to maintaining a tax refund suit against the Government") (citing United States v. Dalm, 494 U.S. 596, 602 (1990)). An administrative claim for a refund must precede even the substitution of the United States as a party. See Omnibus Financial Corp. v. United States, 566 F.2d 1097, 1101 (9th Cir. 1977) (counseling that "a jurisdictional prerequisite to an action pursuant to 26 U.S.C. §

7422, and further to the substitution of the United States as a party, is the filing of a claim for a refund"). Furthermore, a tax refund plaintiff must pay the full amount of tax due before commencing litigation. See Flora v. United States, 362 U.S. 145, 177 (1960); Ardalan v. United States, 748 F.2d 1411, 1413 (10th Cir. 1972) ("The Supreme Court, this circuit, and all other federal circuits have long held that [section 1346] requires the taxpayer to first pay the full amount of an income tax deficiency assessed by the IRS before he/she may challenge the assessment in a suit for refund under § 1346(a)(1).").

## THE ANTI-INJUNCTION ACT

The Anti-Injunction Act provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person. . . ." 26 U.S.C. § 7421(a). "A judicial exception to the act permits an injunction if the taxpayer demonstrates that: 1) under no circumstances could the government establish its claim to the asserted tax; and 2) irreparable injury would otherwise occur." Lonsdale v. United States, 919 F.2d 1440, 1442 (10th Cir. 1990)(citing Bob Jones University v. Simon, 416 U.S. 725, 737 (1974); Enochs v. Williams Packing & Navigation Co., 370 U.S. 1, 6-8 (1962); Souther v. Mihlbachler, 701 F.2d 131, 132 (10th Cir.1983)). See Overton v. United States, 925 F.2d 1282, 1284-85 (10th Cir. 1991)(holding that the anti-injunction act does not allow suits for the release of tax liens). The Anti-Injunction Act prohibits the use of injunctive relief "to prevent the collection of assessed taxes by challenging the underlying tax assessments." Lonsdale v. United States, 919 F.2d at 1442.

**LAW REGARDING THE FEDERAL EMPLOYEES LIABILITY REFORM AND TORT
COMPENSATION ACT OF 1988**

The Federal Employees Liability Reform and Tort Compensation Act ("FELRTCA") provides that an action under the Federal Tort Claims Act "is the sole remedy for any injury to person or property caused by the negligent or wrongful acts of a federal employee acting within the scope of his or her employment." Woodruff v. Covington, 389 F.3d 1117, 1123 n.6 (10th Cir. 2004). See also 28 U.S.C. § 2679(a)(1). The FELRTCA gives federal employees "an absolute immunity from common law tort actions." Woodruff v. Covington, 389 F.3d at 1123 n.6 (quoting Jamison v. Wiley, 14 F.3d 222, 227 (4th Cir. 1994))(internal quotations omitted). The FELRTCA evinces Congress' intent that "the United States, through the Federal Tort Claims Act, is responsible to injured persons for the common law torts of its employees in the same manner in which the common law historically has recognized the responsibility of an employer for torts committed by its employees within the scope of their employment." Haceesa v. United States, 309 F.3d 722, 728 (10th Cir. 2002)(citations and internal quotations omitted). Plaintiffs suing employees of the United States for common law torts must substitute the United States as the defendant. See Salmon v. Schwarz, 948 F.2d 1131, 1141-42 (10th Cir. 1991)(citations omitted). A suit against employees of the United States shall be deemed a suit against the United States, and the United States shall be substituted as the defendant, "[u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose." 28 U.S.C. § 2679(d)(1).

**LAW REGARDING BIVENS ACTIONS**

Courts sometimes recognize direct actions for damages against federal actors for alleged

violations of the Constitution.  See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S 388, 389 (1971).  To determine whether a Bivens remedy is appropriate, the United States Court of Appeals for the Tenth Circuit looks at whether "special factors counsel[] hesitation."  Nat'l Commodity & Barter Ass'n v. Gibbs, 886 F.2d 1240, 1247 (10th Cir. 1989)(alteration in original).  The Supreme Court explained the "special factors counseling hesitation" analysis: "When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional Bivens remedies."  Schweiker v. Chilicky, 487 U.S. 412, 423 (1988).  Bearing these concepts in mind, the Tenth Circuit has concluded that it would be inappropriate to recognize a Bivens remedy for violations of the Due Process Clause of the Fifth Amendment to the United States Constitution by IRS agents because plaintiffs may challenge penalty assessments, and the procedures used to collect them, under the Internal Revenue Code.  See Nat'l Commodity & Barter Ass'n v. Gibbs, 886 F.2d at 1248.

       The Tenth Circuit has taken a different tack regarding alleged violations of the First and Fourth Amendments by IRS agents.  The Tenth Circuit has affirmed that, "while the comprehensive scheme of the Internal Revenue Code should not be indiscriminately disrupted by the creation of new remedies, certain values, such as those protected by the [F]irst and [F]ourth [A]mendments, may be superior to the need to protect the integrity of the internal revenue system."  Id.  Operating on that assumption, the Tenth Circuit has recognized the right of a plaintiff to bring an action for a violation of the First and Fourth Amendments.  See id.

       In the case recognizing Bivens actions against IRS agents for Fourth Amendment violations, the Tenth Circuit sent the case back to the district court, stating that the complaint's "obtuse"

language rendered it impossible to discover the nature of the allegations against the defendants. Id. The Tenth Circuit remanded the action with instructions to the district court to allow the plaintiff to file an amended complaint "which clearly outlines the basis for each of these claims." Id. The Tenth Circuit required that the amended complaint "clearly indicate the property held by the" plaintiff which had been subject to the allegedly illegal searches and seizures. Id. at 1248-49. The Tenth Circuit allowed the plaintiff to sue "only with respect to its own property or rights allegedly infringed by identifiable defendants." Id. at 1249.

A later Tenth Circuit case, citing to National Commodity & Barter Ass'n v. Gibbs, explained that "we have held that, in light of the comprehensive administrative scheme created by Congress to resolve tax-related disputes, individual agents of the IRS are also not subject to Bivens actions." Dahn v. United States, 127 F.3d 1249, 1254 (10th Cir. 1997). Several unpublished Tenth Circuit cases have cited to Dahn v. United States for the proposition that the Circuit has barred Bivens actions against IRS agents. See, e.g., Gass v. United States Dep't of Treasury, 2000 U.S. App. LEXIS 13015, at *11 (10th Cir. June 9, 2000); Gassaway v. United States, 1999 U.S. App. LEXIS 18645, at *3 (10th Cir. August 10, 1999); Hernandez v. Emmer, 1998 U.S. App. LEXIS 26580, at *5 (10th Cir. October 19, 1998). Dahn v. United States, however, dealt solely with a Bivens claim for a violation of the Fifth, and not the Fourth, Amendment, and so properly cited National Commodity & Barter Ass'n v. Gibbs for that proposition. See Dahn v. United States, 127 F.3d at 1254-55. National Commodity & Barter Ass'n v. Gibbs remains, then, the last published word in the Tenth Circuit on Fourth Amendment Bivens actions against IRS agents. See Christopher M. Pietruszkiewicz, A Constitutional Cause of Action and the Internal Revenue Code: Can You Shoot (Sue) the Messenger?, 54 Syracuse L. Rev. 1, 41 & ns.269-272 (2004)(listing cases that "hold that

a <u>Bivens</u> action is precluded, relying incorrectly on NCBA").

## ANALYSIS

Williamson's complaint alleges a laundry list of misconduct by the Defendants without grouping the various articles of illegality into separate and specific causes of action. To the extent that the Court can sift through the Complaint, it discerns four causes of action alleged against the Defendants: a tax refund suit under 28 U.S.C. § 1346, a request for injunctive relief against future enforcement action, a set of common law tort claims, and a <u>Bivens</u> action for violation of various constitutional amendments. The Court will discuss each of these causes of action separately.

**I.      § 1346.**

The Court construes the Complaint to state a claim for a tax refund under § 1346. As stated above, § 1346 authorizes federal district courts to hear cases seeking the recovery of any internal tax that has been collected erroneously or illegally, any tax penalty levied without authority, or any excessive or wrongfully collected sum. <u>See</u> 28 U.S.C. § 1346(a)(1). Simply put, § 1346 allows a plaintiff to file suit "to recover taxes assessed and paid." <u>United States v. New Mexico</u>, 642 F.2d 397, 400 (10th Cir. 1981). As <u>Brennan v. Southwest Airlines Co.</u>, 134 F.3d 1405 (9th Cir. 1998), described it, "where a plaintiff sues to recover a sum that was collected as a tax, the plaintiff has sued for a tax refund." <u>Id.</u> at 1412.

In essence, Williamson alleges that the Defendants unlawfully seized her property under the guise of collecting a tax. In the Complaint, Williamson alleges that the Defendants snatched away her possessions to enforce a "type of tax 1040." Complaint ¶ 28, at 8. According to Williamson, the Defendants imposed this "mythical" tax without legal authority or notice to her. Complaint ¶¶ 11, 17-18, 24, 29, at 5, 7-9. As a result, Williamson contends that she is entitled to the return of that

-12-

property.  See Complaint at 9-10.  The Complaint prays for relief in the form of the "return [of] **all**

properties and monies taken from Petitioner's/Claimant's fiduciaries . . . [and] that alleged liens be

removed and levies dismissed along with the return of all money and property of

Petitioners/Claimants."  Id. (emphasis in original).

      Williamson apparently takes some issue with the Court's construction of her Complaint as

stating a tax refund claim.  The Court issued a Minute Order requesting that the parties brief the

proper procedure for filing an administrative claim for a tax refund with the Treasury Secretary.  See

Minute Order at 1-2, filed September 14, 2005 (Doc. 18).  In her Response to the Minute Order,

Williamson attacks what she calls the Court's "***presumption***" that the Complaint sets forth a tax

refund claim.  Response to Minute Order Entered September 14, 2005, at 1, filed September 20, 2005

(Doc. 19)(emphasis in original).  She asserts instead that her suit "asks this Court to review the

'Notices of Federal Tax Liens, Notices of Levy' and find if 'kind of tax 1040' is supported by any

statutory and regulatory authority and if that authority has any application to her."  Id. at 2.

Williamson suggests that the Court "carefully review" her filed documents in this matter.  Id.

      The Court disagrees with Williamson's characterization of her Complaint.  A careful review

of her Complaint's allegations, outlined above, leads the Court to the conclusion that Williamson has

attempted to state a claim for a tax refund.  In addition, a judicious examination of Williamson's

Response to the Minute Order also compels this Court to the same diagnosis.  While in one breath

Williamson disclaims a potential tax refund claim, in the other breath she requests the Court order that

"all of [her] money, property be restored to [her] with interest," presumably meaning a refund of her

taxes.  See id. at 1, 3.  Also, Williamson objects that the Court is construing her Complaint as only

stating a tax refund claim.  See id. at 1.  The Court, however, made no suggestion in its Minute Order

that it would construe Williamson's Complaint as stating a tax refund claim at all, let alone that this was the only claim the Court found in the Complaint.  <u>See</u> Minute Order at 1-2.

In sum, the Court concludes that Williamson believes that she has been forced to pay a tax and that she intends to regain what she has lost through this suit.  In light of these facts, the Court believes that Williamson intends to sue for a tax refund.  Proceeding on that basis, the Defendants raise two objections to Williamson's suit.  First, if the Court attempts to substitute the United States for the individual Defendants, the Defendants state that Williamson has not fulfilled the administrative requirements for filing a tax refund suit.  <u>See</u> Motion for Summary Judgment at 6.  Second, the Defendants complain that Williamson cannot sue the Defendants in their individual capacity and the United States cannot be substituted for the Defendants, because Williamson has not satisfied the aforementioned administrative requirements.  <u>Id.</u> at 5-6.

As to the Defendants' first objection, no suit for a tax refund shall commence "until a claim for refund or credit has been duly filed with the Secretary" of the Treasury.  26 U.S.C. § 7422(a).  <u>See</u> <u>Sorrentino v. IRS</u>, 383 F.3d at 1188 (citation omitted).  In their Response to the Minute Order, the Defendants spelled out the requirements for a valid administrative claim for a refund: (i) a tax refund claim "must be filed with the service center serving the internal revenue district in which the tax was paid," 26 C.F.R. § 301.6402-2(a)(2); (ii) the tax refund claim "must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the [IRS] of the exact basis thereof," <u>id.</u> § 301.6402-2(b)(1); (iii) the tax refund claim must be filed on an appropriate Form 1040, Form 1040A, or Form 1040X, <u>see</u> <u>id.</u> § 301.6402-3(a)(2); and (iv) a separate tax refund claim must "be made for each type of tax for each taxable year or period," <u>id.</u> § 301.6402-2(d).

Williamson does not allege -- in the Complaint, the Response to the Defendants' Motion, or

the Response to the Court's Minute Order -- that she paid a tax in full and thereafter filed an administrative tax refund claim.  At most, Williamson maintains that she asked for, and the IRS denied, a "**COLLECTION DUE PROCESS HEARING**." Response at 8 (emphasis in original). None of the documents that Williamson has submitted, however, meet the requirements of an administrative tax refund claim.  No document is addressed to an IRS service center; instead, two documents are addressed to "Anthony Martinez, Internal Revenue Service, Appeals Office," and a third document is addressed to "5338 Montgomery Blvd. N.E." in Albuquerque.  The documents contain many legal citations but describe no facts that would inform the IRS of the basis for her claims.  Williamson has not attached a Form 1040, Form 1040A, or Form 1040X requesting a refund. Given the lack of evidence or even an allegation that Williamson paid a tax in full and subsequently filed an administrative tax refund claim, there is no genuine issue that Williamson has failed to meet the jurisdictional prerequisite of a tax refund suit.

The Court agrees with the Defendants' second objection -- that they cannot be sued in their individual capacity.  Williamson repeatedly emphasizes that she is suing the Defendants in their individual, not official, capacities.  See Complaint at 1 (Caption), and ¶ 7, at 4.  The statute authorizing tax refund suits, however, mandates suit only against the United States and not an officer or employee of the United States.  See 26 U.S.C. § 7422(f)(1); Buck v. United States, 466 F.2d at 483.  Normally, the Court would substitute the United States for the individual Defendants and allow the suit to proceed, see 26 U.S.C. § 7422(f)(2), but Williamson, as explained above, has failed to meet the jurisdictional prerequisite to a suit against the United States: payment of a tax in full and the filing of an administrative tax refund claim, see Omnibus Financial Corp. v. United States, 566 F.2d at 1101.  Without the satisfaction of this jurisdictional element, the Court will not substitute the

-15-

United States for the individual Defendants.  There is thus no genuine issue that the Defendants are entitled to judgment as a matter of law on any tax refund claim that Williamson has asserted against them.

## II.   **INJUNCTIVE RELIEF**.

After carefully studying Williamson's pleadings, the Court detects a request for injunctive relief against future enforcement by the IRS of certain tax code provisions.  In her Response, Williamson urges the Court "to enjoin these and all other IRS agents from engaging in this type of illegal activity against the Williamsons forever in the future and be enjoined from conducting this same terrorism against all other Citizens in the fifty republic states of America."  Response at 12.  In the Memorandum attached to the Complaint, without explicitly requesting injunctive relief, Williamson argues that the Anti-Injunction Act does not apply to this suit.  See Memorandum in Support of Libel of Review at 9-10.

The Court starts its examination of the request for injunctive relief with the Anti-Injunction Act, which commands that no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person.  See 26 U.S.C. § 7421(a).  The statutory roadblock against injunctive relief is not entirely insurmountable, for injunctive relief is available to a taxpayer who shows that under no circumstances could the United States establish its claim to the asserted tax and that irreparable injury would otherwise occur.  See Lonsdale v. United States, 919 F.2d at 1442; Overton v. United States, 925 F.2d at 1284-85.

While Williamson cites various legal authorities as a basis for relief, she does not explain why the United States could not establish its claim to the asserted tax under any circumstances.  At most, she contends that the Defendants are "unable to produce any record of any assessment specific to [the

Williamsons], or record of account, conclusive proof that this instant action is not to stop or interfere with any assessment, because there is no assessment." Memorandum in Support of Libel of Review at 10. Williamson's line of reasoning, however, leaves unclear why the IRS could not, on any possible basis, collect a tax from her in the future. Williamson further speculates that the possible involvement of the "governor" of the International Monetary Fund makes the Anti-Injunction Act inapplicable, without providing any factual basis to support such involvement or any legal authority that would conclusively foreclose the United States' claim to a tax in the future based on such involvement. Id. The Court has read through Williamson's briefs liberally for any hint of an argument as to why it would be impossible for the United States to establish a claim to a tax against her in the future, and the Court has found none. As a result, there is no genuine issue that the Anti-Injunction Act bars Williamson's possible claim for injunctive relief.

## III.    FELRTCA.

The Court further interprets Williamson as potentially stating a cause of action for common law torts against the Defendants. Several of Williamson's allegations suggest that she is suing for fraud, extortion, trespass to chattels, conversion, harassment, and abuse of process. See Complaint ¶¶ 20-21, 23, at 7-8; Response at 4, 7-8. To the extent that Williamson intends to allege common-law torts against these individual Defendants, the FELRTCA forecloses this avenue of relief, because it provides absolute immunity to employees of the United States, such as the individual Defendants, against common-law torts. See Woodruff v. Covington, 389 F.3d at 1123 n.6. The proper Defendant in any such suit is the United States, which shall be substituted for the Defendants upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose. See Salmon v.

-17-

Schwarz, 948 F.2d at 1141-42.  In light of Congress' intent to place an absolute barrier to common-law actions against United States employees, there is no genuine issue that FELRTCA prevents Williamson from further maintaining any common-law actions against the individual Defendants.

While the Court entertained the possibility of substituting the United States as the defendant in this case, the fact that neither party has requested that the Court take this action counsels against such a move.  In fact, Williamson has emphasized, in no uncertain terms, that she intends to sue the Defendants individually and does not desire to sue the United States.  See Complaint at 1 (Caption), and ¶ 7, at 4.  In their motion for summary judgment, the Defendants make clear that they do not seek to have the United States substituted for them.  See Motion for Summary Judgment at 8-9.  The Court is reluctant to alter the nature of the parties to this suit when neither party moves for the Court to do so.

## IV.   BIVENS ACTIONS.

Finally, the Court reads the Complaint to state a cause of action for violation of the Fourth, Fifth, Ninth, and Tenth Amendments to the United States Constitution.  Williamson complains that the Defendants have engaged in a taking, in the form of a tax, in violation of those amendments.  See Complaint ¶ 28, at 8; Memorandum in Support of Libel of Review at 7-8.  As such, Williamson is stating a Bivens cause of action for violations of her constitutional rights.  See Bivens v. Six Unkown Named Agents of Federal Bureau of Narcotics, 403 U.S at 389.

Because the gravamen of the Complaint is that the Defendants deprived her of her property without due process of law and invaded her property, the Court will focus on Williamson's Fourth and Fifth Amendment claims.  See Complaint ¶ 28, at 8; Memorandum in Support of Libel of Review at 7-8.  Also, Williamson has pointed to no authority recognizing Ninth or Tenth Amendment Bivens

claims.  The Court's research – with one exception – has led to no cases that explicitly affirm the existence of Bivens causes of action under the Ninth and Tenth Amendments.  While Chemerinsky's Federal Jurisdiction states that "[l]ower federal courts have recognized Bivens suits for violations of the First, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments,"  Chemerinsky cites only one case, from the United States Court of Appeals for the Ninth Circuit, to support this proposition.  4 Erwin Chemerinsky, Federal Jurisdiction § 9.1.2 & n.35.  That case, Kotarski v. Cooper, 799 F.2d 1342 (9th Cir. 1986), however, stands for the proposition that a probationary employee can sue for Bivens violations, without squarely addressing whether Ninth or Tenth Amendment claims are viable under Bivens.  See id. at 1347, 1350.  In light of a subsequent Supreme Court decision, the Ninth Circuit reversed that holding.  See Kotarski v. Cooper, 866 F.2d 311 (9th Cir. 1989).

        The only case the Court has found that recognizes a claim under either amendment, which is independent of any other amendment, is Howard v. Warden, 348 F. Supp. 1204 (E.D. Va. 1972)(Merhige, J.).  The district court there found that the plaintiffs' challenge to a prison's regulations concerning hair stated a cause of action under the "penumbras" of rights protected by the Ninth Amendment.  Id. at 1206.

        To the extent that this case, from outside the District of New Mexico and the Tenth Circuit, and decided more than thirty years ago, has any precedential weight on the Court, subsequent Supreme Court decisions have closed this avenue of relief.  In Correctional Services Corp. v. Malesko, 534 U.S. 61 (2001), the Supreme Court explained that it has recognized Bivens causes of action only in Fourth, Fifth, and Eighth Amendment cases.  See id. at 67-68.  Since these cases, the Supreme Court has "consistently refused to extend Bivens liability to any new context or new category of defendants."  Id. at 68.  The Supreme Court noted:

> In 30 years of <u>Bivens</u> jurisprudence we have extended its holding only twice, to provide an otherwise nonexistent cause of action against individual officers alleged to have acted unconstitutionally, or to provide a cause of action for a plaintiff who lacked any alternative remedy for harms caused by an individual officer's unconstitutional conduct. Where such circumstances are not present, we have consistently rejected invitations to extend <u>Bivens</u>. . . .

<u>Id.</u> at 70.  The Supreme Court expressed its "caution toward extending <u>Bivens</u> remedies into any new context, a caution consistently and repeatedly recognized for three decades." <u>Id.</u> at 74.  The Tenth Circuit recently reiterated the Supreme Court's reasoning, stating that "an alternative cause of action for damages against an individual defendant eliminates either of those two circumstances" articulated in <u>Malesko</u>.  <u>Peoples v. CCA Det. Ctrs.</u>, 422 F.3d 1090, 1101 (10th Cir. 2005).

Neither of the two circumstances outlined by the Supreme Court for expanding <u>Bivens</u> applies here.  Williamson complains that the Defendants engaged in a taking, in the form of a tax, in violation of the Fourth, Fifth, Ninth, and Tenth Amendments.  <u>See</u> Complaint ¶ 28, at 8.  The Tenth Circuit has recognized a <u>Bivens</u> remedy against IRS agents for violations of the Fourth Amendment.  <u>See</u> <u>National Commodity & Barter Ass'n v. Gibbs</u>, 886 F.2d at 1248.  Given the existence of this Fourth Amendment Bivens action, a new Ninth and Tenth Amendment cause of action will not provide an otherwise nonexistent cause of action against individual officers alleged to have acted unconstitutionally.  Also, Williamson has an alternative remedy against the Defendants: a suit under the Fourth Amendment.  Finally, the Court recognizes the Supreme Court's direction that courts should be cautious, as it has been consistently and repeatedly, about extending <u>Bivens</u>.  With this in mind, the Court will not allow Williamson's Ninth and Tenth Amendment <u>Bivens</u> claims to go forward.

On the other <u>Bivens</u> claims, as an initial matter, the Court notes that <u>National Commodity</u>

& Barter Ass'n v. Gibbs precludes a Bivens action for violations of the Fifth Amendment because there are IRS procedures in place to remedy due process concerns. See 886 F.2d at 1248. Given the Tenth Circuit's instructions on this point, the Court will grant summary judgment to the Defendants on Williamson's claim for violation of the Fifth Amendment.

The situation is different regarding the Fourth Amendment claim. The Tenth Circuit has indicated that the values protected by the Fourth Amendment trump the United States' interest in preserving the integrity of its framework for collecting taxes and that an aggrieved taxpayer may bring a Bivens action for violation of his Fourth Amendment rights against IRS agents. See id. As a starting point, then, the doors to the federal courthouse remain open for Williamson to allege that the Defendants trampled on her Fourth Amendment rights.

This case is also similar to National Commodity & Barter Ass'n v. Gibbs in a second aspect. In National Commodity & Barter Ass'n v. Gibbs, the Tenth Circuit instructed the district court to allow the plaintiff to file an amended complaint that clearly outlined the basis of the plaintiff's Fourth Amendment claim and clearly indicated the property held by the plaintiff which had been subject to the allegedly illegal searches and seizures. See id. at 1248-49. The Tenth Circuit allowed this procedure because of the obtuse language of much of the plaintiff's complaint.

Similarly, Williamson's Complaint is a thicket of legal citations and facts, but little connection between the two. The Court cannot discern the factual basis of Williamson's Complaint at this time. In light of this state of affairs, and the Tenth Circuit's prior treatment of a similar case, the Court will follow the Tenth Circuit's lead by dismissing the Fourth Amendment claim without prejudice to allow Williamson to file an amended complaint detailing the factual basis of her Fourth Amendment claim and the property held by her which has been subject to the allegedly illegal search and seizure.

-21-

**IT IS ORDERED** that the Defendants' Motion for Summary Judgment is granted in part and denied in part.  The Complaint is dismissed with prejudice except for the Fourth Amendment claim.  The Fourth Amendment claim is dismissed without prejudice, and Williamson may file an amended complaint detailing the factual basis of her Fourth Amendment claim and the property held by her which has been subject to the allegedly illegal search and seizure.

UNITED STATES DISTRICT JUDGE

*Counsel:*

Nancy L. Williamson
Tijeras, New Mexico

    *Plaintiff pro se*

David C. Iglesias
  United States Attorney
Joseph A. Pitzinger
  Attorney, Tax Division
Department of Justice
Dallas, Texas

    *Attorneys for the Defendants*

Julie J. Vargas
Hunt & Davis, P.C.
Albuquerque, New Mexico

    *Attorneys for Potential Intervenor*